Geoffrey C. Angel
ANGEL LAW FIRM
803 West Babcock
Bozeman, Montana 59715
Tel: (406) 922-2210
Fax: (406) 922-2211
christianangel@hotmail.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BREANNE CEPEDA, | Cause Number CV-13-59-H-SEH |
| Plaintiff, | CEPEDA'S RESPONSE IN OPPOSITION TO MSU'S MOTION TO DISMISS |
| vs. | |
| MONTANA STATE UNIVERSITY, | |
| Defendant. | |

This is not a case of sexual harassment this is a case of sexual assault. Breanne Cepeda, formerly Cutler, filed and resolved a claim of sexual harassment against MSU and Komiyama before the Human Rights Bureau. This case does not involve harassment but involves only sexual assault which was not before the Human Rights Bureau. MSU's motion to dismiss must be denied. MSU seeks to use its admission of Human Rights violations as a shield against its other unlawful conduct. There is no factual or legal support for this motion. The issue presented is whether MSU can violate Title VII of the Civil Rights Act and Montana's Human Rights Act (MHRA) and at other times violate other laws? In other words, is Breanne Cepeda entitled to a remedy for Human Rights violations and also entitled to a remedy for other unlawful conduct or does MSU's liability for sexual harassment immunize MSU from its other unlawful conduct?

1  The Court must deny the motion to dismiss because the facts concerning the
2  sexual assaults and related injuries and damages were not before the MHRB.
3  MSU's admission of Human Rights violations and payment of damages for those
4  acts does not preempt or otherwise resolve Cepeda's injuries or damages from
5  sexual assault. Cepeda filed an administrative charge of discrimination against
6  MSU and Komiyama for sexual harassment which the law required her to do.
7  Cepeda could not include her claims of sexual assault. Cepeda filed this civil suit
8  against MSU and Komiyama to pursue those claims. The parties are the same but
9  the facts, injuries and damages are not.

10  MSU now moves to dismiss this suit brought against it for negligent hiring,
11  retention and supervision and negligent infliction of emotional distress, violation of
12  Title IX of the Education Amendment Act of 1972 and civil rights violations under
13  42 U.S.C. § 1983. MSU claims because it admitted violating Title VII and the
14  MHRA it cannot now be found to have committed any other wrongs. MSU's
15  argument is that the sexual harassment claims are identical to or subsumed within
16  its other unlawful conduct. But, the conduct and the injuries are distinct and the
17  conduct complained of in this suit is not covered by either Title VII or the MHRA.

18  In an oversimplification, Cepeda complained of sexual harassment before
19  Montana's Human Rights Bureau. MSU admitted liability and confessed
20  judgment. Cepeda accepted MSU's confession for the claims pending before the
21  MHRB. MSU requested a global release which Cepeda rejected. Cepeda then
22  complained of forced sexual contact, infliction of emotional distress, violation of
23  Title IX and her Constitutional rights in state court. MSU submitted itself to suit in
24  federal court and now seeks immunity for these acts based on its prior admission of
25  sexual harassment. The conduct complained of is different, occurring on different
26  days and causing different damages under the law. A comparison of the conduct,
27  the injuries and damages makes clear they are separate wrongs with separate
28  remedies, that occurred at separate times.

| Title VII and MHRA | Negligent Hiring Retention and Supervision, Negligent Infliction of Emotional Distress | Title IX of the Education Amendment Act of 1972 | Civil Rights Act 42 U.S.C. 1983 |
|---|---|---|---|
| Sexual Harassment | Sexual Assault | Hostile environment | Violation of Constitutional Rights |
| Conduct is unwanted sexual advances | Conduct is forced sexual contact | Conduct denies benefits of education | Conduct violates established Constitutional rights |
| General damages under Title VII and MHRA | Medical expense, pain, suffering, anxiety and loss of course of life[1] | General and special damages[2] | General and special damages under state tort law[3], costs and attorney fees[4] |

Cepeda filed her first Amended Complaint which does not include Komiyama or the claims against him. Cepeda also dismissed the federal causes of action against MSU. Therefore, the remaining claims are against MSU alone and consist of Negligent Hiring, Retention and Supervision and Negligent Infliction of Emotional Distress based on the sexual assaults alone.

With this amendment the precise issue presented here has been addressed by the Montana Supreme Court in the landmark case of *Saucier v. McDonald's Restaurants of Montana, Inc.*, 2008 MT 63, 342 Mont. 29, 179 P.3d 481. Saucier was severally mentally disabled. *Saucier at ¶¶ 7-11*. She was hired to work at McDonald's as a lobby person. *Id at ¶ 12*. Shortly thereafter, she began a sexual relationship with her Manager. *Id at ¶ 13*. The relationship went awry and Saucier's limited Conservator filed a charge of sexual harassment against her

---

[1] Section 27-1--201, et seq.

[2] Franklin v. Gwinnett County Schools, 112 U.S. 1028 (1992).

[3] Carey v. Piphus, 435 U.S. 247 (1978).

[4] 42 U.S.C. § 1988.

Manager and the Restaurant before the MHRB. *Id at ¶ 22.* Saucier alleged gender discrimination and a sexually hostile work environment. *Id.* The MHRB found against Saucier because it concluded the sexual relationship she had with her Manager was consensual and therefore excluded from the definition of discrimination. *Id at ¶ 24.* Saucier then filed a civil action in state court based on the alleged sexual harassment and alleged sexual assaults. *Id at ¶ 27.* The Defendants moved to dismiss Saucier's tort claims as barred by the MHRA and moved to dismiss the discrimination claims on the merits. *Saucier at ¶ 29.* The district court granted McDonald's motions concluding the tort claims were barred by the exclusive remedy provision within the MHRA. *Id.* The district court left remaining the discrimination claims against the Manager. Saucier then entered into a confession of judgment with her Manager for $500,000. *Id at ¶ 30.* Saucier appealed the dismissal of her tort claims. *Id at ¶ 31.* The Supreme Court reversed based on an error of law. *Id at ¶ .* The Supreme Court held sexual assault does not fall within the definition of sexual harassment and cannot be covered by damages awarded for sexual harassment. *Id at ¶ 68.* "[T]he MHRA establishes procedures and remedies, separate from tort law, for legal redress of conduct which falls within the definition of unlawful discrimination." *Id at ¶ 39.* "[N]on-consensual sex goes beyond any reasonable conception of 'sexual harassment' and falls outside the MHRA's definition of 'discrimination.'" *Id at ¶ 71.* "Simply put, allegations of non-consensual sex sound in tort and not in discrimination." *Id at ¶ 71.* Thus, Saucier was permitted to recover a judgment of $500,000 for sexual harassment and still pursue her tort claims for the sexual assaults.

   The *Saucier* Court considered and rejected the objection that the claims arise from the same facts and the same parties and therefore should be barred. It did so by examining *Vettel-Becker v. Deaconess Medical Center, 2008 MT 51, 341 Mont. 435, 177 P.3d 1034.* In *Vettle-Becker* the plaintiff was terminated and alleged his termination was due to discrimination. *Id at ¶ 23.* He filed a charge

before the MHRB and later filed a claim in state court alleging his termination violated Montana's Wrongful Discharge from Employment Act (WDEA). *Vettle-Becker at ¶ 23*. The MHRB dismissed the discrimination claim. *Id.* Defendant then moved to dismiss the WDEA claim based on the exclusive remedy provision in the MHRA which the district court granted. *Id at ¶ 24*. The Supreme Court reversed noting that Vettle-Becker's claim under the WDEA is not based upon allegations of discrimination. In other words, the jury could find a wrongful discharge without proof of a pattern or practice of discrimination. "Discrimination can occur without a wrongful discharge and wrongful discharge can occur without a discriminatory act." *Vettle-Becker at ¶ 40*. Importantly, Vettle-Becker suffered a single injury but was allowed to pursue two successive alternate theories of recovery. By contrast, both Saucier and Cepeda suffered injuries due to sexual harassment and separate injuries due to sexual assault.

Saucier's proof of sexual harassment was a sexually hostile and offensive environment altering the terms of her employment and work schedule. Saucier's proof of sexual assault were on and off-premises sexual contact and alleged non-consensual sex. Saucier's Manager confessed judgment for $500,000 on the sexual harassment claims. The Supreme Court held Saucier could still pursue her claims of sexual assault because they do not fall within the definition of discrimination and could not form the basis for her charge before the MHRB or the confessed Judgment. "If the alleged conduct falls outside the MHRA's definition of unlawful discrimination, the plaintiff may maintain a tort action." *Saucier at ¶ 79*.

Similarly, Cepeda's proof of sexual harassment before the MHRB was that Komiyama created a sexually hostile and offensive environment subjecting her to discrimination in violation of Title VII and the MHRA. Cepeda's proof of sexual assault involves on and off-premises coerced sexual contact and sexual assault. As the victim of both courses of unlawful conduct, it is not Cepeda's fault Komiyama, with MSU's knowledge, was both discriminating against her and assaulting her.

1  While the action before the MHRB was able to redress one of these wrongs it was
2  not able to provide a remedy for the sexual assaults.
3    MSU seeks to use its confession of liability for sexual harassment as a shield
4  against its other wrongs by arguing the sexual assaults are precluded under the
5  doctrine of *res judicata*.  *Res judicata* requires the parties, underlying facts and
6  injuries to be the same.  It prevents a party from recovering damages from the
7  defendant twice for the same injury.  *Res judicata* does not apply because the
8  subject matter of the present and past actions are not the same, the injuries are not
9  the same and they did not occur at the same time.  Cepeda could not have litigated
10 the claims set forth in this action before the MHRB or sought damages for the
11 sexual assaults before the MHRB because sexual assault does not fall within the
12 definition of discrimination.  This is the current state of the law in Montana.
13   MSU asks this Court to apply state law principles of *res judicata* relying on
14 *Costanich v. Dept. of Soc. And Health Serv., 627 F.3d 1101, 1007 n. 10 (9th Cir.*
15 *2010)*.  Interestingly, in *Costanich* plaintiff filed an administrative action and a
16 subsequent state court action.  The defendant removed the matter and was granted
17 summary judgment based on Eleventh Amendment immunity, not *res judicata*.  In
18 fact, the district court allowed the subsequent claims which did not raise the same
19 issues presented in the Administrative claim.  "The district court correctly held that
20 the doctrine of collateral estoppel inapplicable because the issues considered by the
21 state courts and the administrative agency were not identical to those presented in
22 this federal action."  *Id*.  This Court should reach the same result based on
23 Montana's principles of *res judicata*.
24   Montana defines *res judicata* in terms of "primary rights" holding that a
25 claim consists of all the effects and consequences of a violation of a primary right.
26 So long as the right violated was not litigated in the prior action there is no factual
27 basis upon which *res judicata* could apply.  In this case, Cepeda's right to be free
28 from sexual assault was not before the MHRB nor was it remedied.  Cepeda's

primary right litigated before the MHRB was the right to be free from the consequences of discrimination. Discrimination includes sexual harassment but does not include sexual assault. Cepeda's primary right brought in this case is the right to be free from sexual assault. MSU argues these two rights are all part of the same transaction and therefore are barred by *res judicata*.

MSU relies on the district court's decision in *Slice v. Ferriter, 2009 WL 2948582*, to support its *res judicata* argument. In *Slice* the district court dismissed a subsequent federal claim for discrimination against the Montana Department of Corrections because Slice raised and resolved the same allegations before the MHRB. Slice was not raising any new, additional or different facts but was complaining of the same conduct she complained of before the MHRB and the same injury. While Cepeda and Saucier both complained of other wrongs that were not part of the discrimination, Slice only complained of the same conduct which made up her charge of discrimination. *Slice* is factually distinct from *Saucier*, *Vettle-Becker*, and this case because in each of these cases the conduct which undergirds the claim for relief is distinct from the earlier claims before the MHRB. In fact, *Slice* supports Cepeda's position. In *Slice* the Ninth Circuit reversed Judge Strong because the claims of retaliation could not have been brought before the MHRB and were not subject to *res judicata*.

Cepeda's complaint alleges Komiyama subjected her to instances of coerced sexual contact and sexual assault. *Complaint at ¶ 19*. "Komiyama forced female students including Cepeda to perform sexual favors." *Id at ¶ 31*. During the later part of the semester Komiyama went to Cepeda's house, served her excessive amounts of alcohol, then engaged in sexual intercourse with her while she cried and repeatedly said 'no'." *Id at ¶ 32*. It is true Komiyama discriminated against Cepeda on some occasions. He sexually assaulted her on others. These claims occurred at separate times, require separate elements of proof and resulted in separate damages under the law.

      For example, the relief granted before the MHRB was limited to the general damages Cepeda suffered due to sexual harassment. It could not, as a matter of law, have included compensation for the sexual assaults which are by definition not part of the charge of discrimination.

      Cepeda's claims of negligent hiring, retention and supervision and negligent infliction of emotional distress are premised upon Komiyama's sexual assaults. They do not require proof of sexual harassment. The facts which support a claim of sexual harassment may prove relevant inquiry into whether MSU had notice Komiyama posed a threat of physical harm by way of coerced sexual contact or rape but the facts are not necessary proof of these claims. To prove negligent hiring, retention and supervision and negligent infliction of emotional distress Cepeda must prove MSU owed her a duty that it breached causing her damages. The underlying conduct is the sexual assaults. These unlawful acts are excluded from the definition of discrimination. The MHRB would not have heard evidence concerning this conduct because it is not relevant to the charge and is excluded from the definition of what could constitute sexual harassment. Cepeda could not have raised her claims or sought damages for sexual assaults before the MHRB. The claims are unrelated to sexual harassment. If Cepeda were permitted to file her claims of discrimination and negligence at the same time a jury would have been permitted to award separate damages for each separately.

      Finally, to the extent the complaint can be read to allege claims under 42 U.S.C. § 1983, assault and battery and for punitive damages against MSU those claims have been omitted from the amended complaint filed contemporaneously herewith. The arguments in this regard in MSU's motion to dismiss are moot.

DATED this 15th day of November 2013

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains 2,430 words according to the word count of WordPerfect 12 excluding caption and certificates of service and compliance.

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2013 I caused a true and correct copy of the foregoing document to be served upon the opposing party or counsel by electronic filing and via United States Mail, First Class mail, postage prepaid and addressed as follows:

| | |
|---|---|
| W. Anderson Forsythe<br>Moulton, Bellingham P.C.<br>P.O. Box 2559<br>Billings, Montana 59103 | Rebekah J. French<br>Risk Management & Tort Defense<br>P.O. Box 200124<br>Helena, Montana 59620 |

ANGEL LAW FIRM

/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff